[L. A. No. 3973. Department Two.—April 4, 1916.]

In the Matter of the Estate of A. F. M. STRONG, Deceased.

ESTATE OF DECEASED PERSON—ACCOUNTING OF ADMINISTRATOR—CROSS-EXAMINATION TO SHOW OWNERSHIP OF PROPERTY—CONTEST OF ACCOUNT.—On proceedings for the settlement of the account of an administrator, who during the lifetime of the deceased had been his confidential agent and legal adviser, the contestant should be allowed a wide latitude in the cross-examination of the administrator for the purpose of showing that certain moneys and properties asserted by the administrator to be his own in fact belonged to the estate. In this case, the undue curtailment of the cross-examination was error.

ID.—CLAIM OF OWNERSHIP BY ADMINISTRATOR.—The answer of the administrator, when a witness, that the property in controversy was his, did not foreclose further inquiry as to its ownership.

APPEAL from an order of the Superior Court of Los Angeles County settling the account of the administrator of the estate of a deceased person. Fred H. Taft, Judge.

The facts are stated in the opinion of the court.

Davis & Rush, for Appellant.

Bradner W. Lee, Bradner W. Lee, Jr., and Kenyon F. Lee, for Respondent.

HENSHAW, J.—A. F. M. Strong died intestate in the city of Los Angeles, leaving as his heirs at law his son, W. A.

Strong, and two daughters, Alice B., and Hattie Strong. The son was appointed administrator of his father's estate, which estate was appraised at over three hundred and eighty thousand dollars. To the allowance of the administrator's first annual account Hattie Strong, his sister, duly interposed objections. Upon these objections issue was joined. After trial the court entered its order and decree settling and allowing the account and report as full, true, and correct. This appeal is taken from the decree so doing.

No objections are urged to the disbursements of the administrator. The gist of the controversy between the parties is found in the contention of the appellant that the administrator's account is not, as it purports to be, a full, true, and correct account of all the property which has come into the administrator's hands belonging to the estate.

What contestant in the court below undertook to show was that relations of the closest intimacy and confidence existed between the father and his only son; that after the admission of the son to practice law in 1898, he became the legal adviser and business manager of his father's affairs; that no small part of this business was the loaning of money upon securities; that the son transacted this business, collected the moneys of the father, in some instances appropriating these moneys to his own use, and that thus, at the time of his father's death in February, 1913, the son was the actual custodian of moneys and properties really belonging to his father's estate to the amount of about forty thousand dollars; that he refused to enter these moneys and properties in his inventory or in his report and account as the properties of the estate, insisting that they were his own; that his father during all of the latter years of his life had made his son's office his own, having no other, and confided his business affairs wholly to the son's management; that the son at the time he was admitted to the practice of the law had no property whatsoever of his own; that his earnings in the practice of his profession during the years thereafter, and up to the time of his father's death, were no more than sufficient to provide for his support; that the father and son had joint access to the safe-deposit boxes in which their papers and securities were deposited; that during the years of their business intercourse the son had collected nearly two hundred thousand dollars of his father's moneys; that these moneys, at his will, he placed in bank—sometimes

to his father's account and sometimes to his own personal account; that some of the notes and mortgages which the son contended were his property were notes and mortgages running directly to the father, and where assignments of these notes and mortgages appeared to the son, they were made to the son by the father for purposes of collection only and were, upon the death of the father, falsely claimed by the son to be his own property.

In the effort to establish these matters the son was placed upon the witness-stand, and an attempt was made to cross-examine him after he had testified that his account and report were full, true, and correct, and embraced all the properties of the estate known to him or which had come into his possession. The cross-examination was rigidly limited by the court. No better success attended the efforts of the contestant to secure answers to similar questions when she made the administrator her own witness. Endeavor was also made by the contestant to compel the production of the administrator's bank-books and books of account, under the contention that these books would show that the moneys and properties asserted by the administrator to be his own in fact belonged to the estate. The single complaint made upon this appeal is that the court unduly and illegally restricted these inquiries of the contestant. An examination of the record impels the declaration that this complaint is well founded.

The case presented is that of one occupying relations of highest confidence with his principal, and being at the same time practically in complete control of the principal's large business affairs. Upon the death of the principal he becomes administrator of his estate. Under such a relationship and under such business management, involving, as it did, the admitted deposit of the principal's funds to the trusted agent's account, involving, as also it did, the assignment to the agent of the negotiable instruments and securities taken in the name of the principal, every reason was presented dictating that the court should have allowed, as the administrator should have desired, a broad and complete inquiry into the history and fairness of any of these questioned transactions. This, of course, is not the case of an endeavor to establish as property of the estate the property of an administrator in nowise connected with the estate. It is in no sense an inquiry into the purely personal and exclusive business

affairs of the administrator. But it is an inquiry into the history of the dealings of the administrator with property which, upon the face of each transaction, originally stood as property of the estate, and a legitimate inquiry into the dealings of a confidential agent with that property. After a perusal of the record, we confess to a difficulty in understanding the grounds of the court's rulings curtailing and forbidding this cross-examination. The court seems to have had in mind the correct rule and principle of evidence governing the inquiry, as, when it says, ''The inherent right lies in the court as an equitable proposition to be satisfied that he accounted, by accounting to the estate for everything that had come into his hands prior to the death of his decedent.'' And again, ''In the absence of a more specific way to proceed and get the benefit of what this man (administrator) does know of the estate, the property that might have belonged to the estate, I shall make the latitude quite wide.'' But notwithstanding these declarations, when it came to the examination of the administrator, the rulings of the court were in such marked contrariety to its declarations as to the latitude to be allowed on examination and cross-examination as seriously and injuriously to curtail contestant's rights. It would appear that the trial court believed that the contestant was bound by the statements of the administrator, and was thus precluded from pursuing her inquiries further.

Let us illustrate: A note and mortgage had been executed by C. G. Smith to the deceased for six thousand five hundred dollars. That mortgage was paid and released by the deceased shortly before his death. The funds arising from this payment were not by the administrator credited to the estate of the deceased. The administrator admitted receiving and retaining this money and said that it was his own. The question is then asked: ''Can you explain, then, how it was that the mortgage was made by Smith in favor of your father if the money was yours? Go ahead and explain it.'' An objection to this question was sustained by the court, and all further inquiry along these lines refused.

Again, there was a note for six thousand dollars, secured by mortgage, made to the deceased by Cecelia Levitt. These papers bore indorsements in the following words: ''Pay Will A. Strong or order without recourse on me. A. F. M. Strong.'' The handwriting was that of deceased. The note

and mortgage were paid to the administrator and the moneys retained by him as his own. It was contended that the indorsement was for purposes of collection only. The following are a few of the questions asked by contestant touching the history of this matter, to which questions objections were sustained by the court:

"I wish you would tell the court the facts and circumstances of making that note and mortgage to your father.

"To whom did the money belong for which the note and mortgage were given?

"Did you make the loan to Cecelia Levitt of your own money or was it your father's money?

"Why did your father make that assignment?

"What consideration did you give him for that?

"Answer. Because it was my money that went into that note.

"Question. Then why was the mortgage taken in your father's name?

"I ask you to make full explanation of the transaction wherein $6000 of your money was loaned to Cecelia Levitt and the note and mortgage taken in your father's name.

"Where did you get the $6000 that you loaned to Cecelia Levitt?

"Was this $6000 money that you had collected for your father?

"How did you pay this $6000 to Cecelia Levitt, in check drawn upon your account or in cash?

"Did you draw this $6000 out of any bank account standing in your name wherein were commingled funds belonging to you and your father?

"Why did not your father make the assignment of this note and mortgage to you immediately upon the execution of the mortgage to him?

"Was the money that you say you loaned to the Levitt's given to you by your father?

"Have you any check that you drew for the payment of that money to the Levitt's?

"Did you pay your father anything for the assignment of the note and mortgage?

"Why did you not have this assignment recorded?"

To all of these questions, and to a multitude of others, seeking to learn from this administrator and confidential agent

the history of the transactions resulting in his assertion of ownership of properties such as this, ownership of which as appears on the face of the instruments was in the deceased, or, as contended by the contestant, were assigned to the administrator for purposes of collection only, objections were sustained and the inquiry forbidden.

There was also a note for ten thousand dollars in favor of the deceased secured by trust deed to the Title Insurance and Trust Company. The back of the note bore the indorsement, ''December 11, 1912. Without recourse pay to W. A. Strong or order together with all rights accrued or to accrue under the deed of trust securing this note. A. F. M. Strong.'' The name ''A. F. M. Strong'' was in the handwriting of the deceased. The rest was in the handwriting of the administrator. The administrator insisted that he was justified in not entering this note and mortgage as one of the assets of the estate upon the ground that they were his own. The contention again was that the assignment was made to him for purposes of collection.

''Q. What did you pay or give to your father for this note?

''Did you give him anything for the note and trust deed?

''Did you pay him anything for making this assignment to you?

''Who collected the interest on this note after it was made, down to the time of your father's death?

''What were you worth at the time you were married?''

To all these and like questions objections were sustained.

The administrator had testified that while he had made many collections on account of his father, depositing some of these collections to his own personal credit and others to his father's, that he had monthly settlements with his father of their affairs.

''Q. Have you a bank-book that you kept or other book showing the money that you collected for your father belonging to him and that you deposited in any bank or banks in this city in your name?

''Did you collect any money for your father during that time belonging to him which you deposited in the bank or banks in your own name and to your own credit?

''Will your account show, if produced here, what money you collected and deposited in your name belonging to your father's estate?''

No answers were permitted to these and other similar questions.

We have thus outlined a few of the transactions concerning which contestant made inquiry. The others were of the same general character and the rulings as to each were the same. In addition the court refused to permit contestant to bring into court and examine the bank-books of the administrator. As has been said, no justification can be found for the rigidity of these rulings. They seem to have been, in the court's mind, based upon its conviction that all further inquiry was foreclosed by the answer of the administrator that the property in controversy was his, and this proposition we find to a great extent advanced in the brief of respondent. Thus, as to the Smith mortgage, it is said, as being a complete answer to appellant's complaint, "The money was paid to W. A. Strong as it was his and always was his, and he continued to use it." As to the Cecelia Levitt mortgage it is said, "It was assigned to witness because it was the witness' money which was loaned on the note and mortgage." Such indeed is the administrator's testimony. But this was the precise subject matter of controversy.

There is no occasion here for any disquisition as to the value of cross-examination, nor as to the right to a liberal exercise of it under the indicated circumstances. The administrator's position was one of hostility to the interests of the estate which he represented. It was not only the duty of the court to have permitted a liberal examination of a confidential agent and administrator under the conditions shown, but the administrator himself should have welcomed the opportunity for full disclosure establishing the integrity of all his transactions.

The decree appealed from is therefore reversed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.